UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORNERSTONE CHEMICAL COMPANY** | CIVIL ACTION |
| **VERSUS** | NO. 20-1411 |
| **NOMADIC MILDE M/V ET AL** | SECTION "L" (1) |

### ORDER AND REASONS

Before the Court is Crescent Towing & Salvage Company, Inc.'s[1] motion for summary judgment. R. Doc. 115. Compass Shipping 40 Corp. Ltd. and Tomini Symphony Ltd.[2] filed a response, R. Doc. 141, and Cornerstone Chemical Company[3] filed an opposition, R. Doc. 142. Crescent submitted a reply, R. Doc. 146, and Cornerstone submitted a sur-reply. R. Doc. 150. Having carefully considered the parties' briefing, the record, and the applicable law, the Court now issues this Order and Reasons.

**I.   BACKGROUND**

These consolidated admiralty actions arise from an allision that occurred on May 8, 2020 in the Mississippi River. Plaintiff Cornerstone Chemical Company ("Cornerstone") alleges that on that date, the M/V NOMADIC MILDE ("MILDE") allided with the M/V ATLANTIC VENUS ("VENUS") near Plaintiff's dock located near Waggaman Louisiana. R. Doc. 1 at 1. Cornerstone alleges that the subsequent effort to disentangle the vessels with the aid of two tugs, the M/V

---

[1] Crescent Towing & Salvage Company, Inc. is a defendant, consolidated cross defendant, consolidated claimant, and a counter defendant.

[2] Compass Shipping 40 Corp. Ltd. is a consolidated petitioner, consolidated claimant, consolidated counter claimant, counter claimant, and Tomini Symphony Ltd. is a consolidated petitioner, defendant, consolidated claimant, counter claimant.

[3] Cornerstone Chemical Company is a plaintiff and consolidated claimant.

1

ERVIN S. COOPER ("ERVIN") and the M/V NED FERRY ("NED"), both owned and operated by Defendant Crescent Towing & Salvage ("Crescent"), caused the MILDE to allide with Cell No. 2 of Cornerstone's dock, destroying that cell and causing substantial damage to Cell No 3.

Based on the allision and ensuing damage, Plaintiff filed suit against the MILDE, the VENUS, and Crescent, for violations of various Inland Rules of Navigation and unseaworthiness. Cornerstone subsequently amended its complaint, adding the M/V TOMINI SYMPHONY ("TOMINI") as a Defendant, alleging that the TOMINI caused an "unusual and dangerous wake that exacerbated and/or contributed to the MILDE's uncontrolled condition" shortly before the allision occurred. R. Doc. 44 at 2.

On May 14, 2020, Golden Helm Shipping Co. S.A. and Osaka Fleet Co., Ltd. (the "VENUS Interests"), respectively as owner and manager of the VENUS, filed a Petition for Exoneration from or Limitation of Liability. On May 21, 2020, Intership Navigation Co., Ltd., New Nomadic Short Sea Shipping AS, and Nomadic Chartering AS (the "MILDE Interests"), as the owners and managers of the MILDE, filed a Petition for Exoneration from or Limitation of Liability. On July 6, 2020, Compass Shipping 40 Corp. Ltd. ("Compass") and Tomini Symphony Ltd. ("Tomini," and collectively with Compass, the "TOMINI Interests"), as owners pro hac vice of the TOMINI, filed a Petition for Exoneration from of Limitation of Liability. Subsequently, the limitation actions were all transferred to this Court and consolidated under the master case, Civil Action No. 20-1411. R. Docs. 29; 56.

On September 8, 2020, the following underwriters and insurers of Cornerstone Chemical Company were joined to the action under Federal Rules of Civil Produce Rule 20(a)(1): Factory Mutual Insurance Company, Zurich American Insurance Company, HDI Global Insurance

Company, Starr Technical Risks Agency, Inc., SCOR S.E., Helvetia Versicherungen, and Hannover Ruck SE (collectively, "Underwriters"). R. Doc. 73.

## II. PENDING MOTION

Defendant Crescent moves for summary judgment, contending that its assist tugs, the ERVIN and the NED, were operating under the orders and control of the pilot aboard the MILDE—the vessel that the tugs were assisting in response to an emergency situation—and that the tugs followed all orders of the pilot and did nothing independent of those instructions that contributed to the allision between the MILDE and Cornerstone's chemical facility. R. Doc. 115; R. Doc. 115-1 at 1. Accordingly, Crescent asserts that it was free from fault in contributing to the dock allision and therefore is entitled to summary judgment.

Cornerstone opposes the motion, contending that a genuine dispute exists regarding whether Crescent's tugs followed the pilot's orders or otherwise acted negligently in a manner that directly contributed to the allision of the MILDE with its dock. R. Doc. 142 at 2.[4]

## III. LEGAL STANDARD

Summary judgment is proper if the pleadings and the evidence gathered in discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the district court of the basis

---

[4] The Tomini Interests do not take a position on the merits of Crescent's motion but object to certain putative facts that Crescent asserts are undisputed. R. Doc. 141. Because the Tomini Interests's arguments ultimately do not bear on the analysis or resolution of Crescent's motion, the Court need not discuss them further.

for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**IV. DISCUSSION**

Crescent posits two arguments in support of its motion for summary judgment. First, it notes that its vessels, the ERVIN and the NED, are harbor tugs that assist ships. Because assist tugs cannot be able liable for following orders and because the ERVIN and NED followed all orders of the pilot in charge, Crescent argues that summary judgment is due. R. Doc. 115-1 at 10-11. Second, Cornerstone contends that, under the *in extremis* doctrine, it cannot be liable because any negligence on the part of its tugs was a result of an emergency situation created by the negligence of other vessels. *Id.* at 12-13. The Court considers these arguments in turn.

### A. Crescent's Breach of Duty in Executing Pilot's Orders and Other Negligence

"Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact." *Archer Daniels Midland, Co. v. M/T AMERICAN LIBERTY*, 538 F. Supp. 3d 641, 648 (E.D. La. 2021) (quoting *Luwisch v. Am. Marine Corp.,* No. CV 17-3241, 2018 WL 3031887, at *4 (E.D. La. June 18, 2018)). "Assist tugs have a duty to follow the orders of others rather than taking action on their own." *In re Can Do, Inc. I*, No. CIV.A. 02-067, 2004 WL 2216529, at *9 (E.D. La. Sept. 30, 2004). An assist tug that acts under and in compliance with the orders of a third-party pilot, who it is bound to obey, cannot be liable for damage caused by the vessel "being assisted unless it is shown that [the assist tug] is guilty of some independent negligence." *Baker, Carver & Morrell Ship Supplies v. Mathiasen Shipping Co.,* 140 F.2d 522, 525 (2d Cir. 1944); *accord Penn Mar., Inc. v. Chevron U.S.A. Inc.*, No. CV 13-5441, 2014 WL 12539343, at *1 (E.D. La. July 28, 2014) (observing that "assist tugs are only exonerated from liability if they are not negligent in carrying out their orders"). A tug "owes a duty to exercise reasonable care and maritime skill, as prudent navigators employ in the performance of similar services." *Aiple Towing Co. v. M/V Lynne E. Quinn*, 534 F. Supp. 409, 411 (E.D. La. 1982).

Crescent argues that summary judgment is warranted because the ERVIN and the NED purportedly followed all orders of the pilot in charge. R. Doc. 115-1 at 10-11. Crescent explains that, in the normal course of their work, the ERVIN and NED are directed by pilots who are aboard the ships that the tugs are assigned to assist. R. Doc. 115-1 at 4. According to Crescent, on the date of the incident, its dispatch called the ERVIN to assist in the emergency caused by the MILDE's allision with the VENUS. The ERVIN arrived at the location of the incident, positioned itself on the port bow of the MILDE, and awaited the arrival of pilots. *Id.* Shortly

5

thereafter, Pilots David Shirah and Nicholas Columbo, Jr. boarded the VENUS. At that point, Crescent avers, the ERVIN took its orders from Pilot Shirah and faithfully executed all his orders. *Id.* at 5. Around the same time, the NED arrived at the scene and Pilot Shirah placed it on the port stern of the MILDE. From that point onward, the NED took its orders from Pilot Shirah and, like the ERVIN, complied with all his orders. *Id.*

The situation went awry, Crescent claims, after Pilot Shirah ordered the MILDE to give 10% more throttle astern. *Id.* at 6-7. The MILDE began to propel toward, and eventually allided with, Cornerstone's chemical facility. In sum, Crescent asserts that its tugs, in responding to an emergency caused by other vessels, followed all commands given by Pilot Shirah, who, along with Pilot Columbo, did not fault their performance. *Id.* at 9.

Cornerstone counters that summary judgment in favor of Crescent is precluded because fact issues exist regarding Crescent's negligence. R. Doc. 142. Cornerstone points out that Pilot Shirah testified that he specifically requested tractor tugs to assist with disentangling the MILDE and the VENUS because those types of tugs are "the gold standard"—"they are the most powerful and most maneuverable class of tugboats on the river." R. Doc. 142-8 at 12. And Crescent had several Z-drive tractor tugs in the New Orleans area on the date of the incident. R. Doc. 142-2 at 15-16. But instead of sending those vessels to assist, Crescent dispatched the NED and the ERVIN, two twin-screw conventional tugs, which are far less powerful than Z-drive and tractor tugs. *Id.* These tugboats, according to Cornerstone's putative expert Captain Christopher Karentz, lacked the power to hold the MILDE's position. R. Doc. 142-10 at 5.

Cornerstone also has provided deposition testimony from Pilot Shirah and the tugs' respective crews indicating that Pilot Shirah ordered the NED and the ERVIN to hold the MILDE's position but that the tugs did not do so—a failing attributable to the tugs being

underpowered and their crews' inattention to the shifting position of the MILDE. R. Doc. 142-10 at 5-7. Cornerstone points to testimony from the crews' members acknowledging that they did not use the tugs' onboard navigational systems to monitor the change in the MILDE's position. R. Doc. 142-1 at 6. Instead, as the tugs' crewmembers acknowledged in their testimony, while the alleged emergency was ongoing, the crew documented the dramatic scene for their personal purposes, using their cell phones to take pictures and videos of the MILDE and the VENUS. R. Docs. 142-13 at 14-15; 142-14 at 14-16; 42-15 at 6. These actions assertedly violated Cornerstone's policy prohibiting the use of personal electronic devices when doing so may interfere with or distract from the safe operation and navigation of the vessel. R. Doc. 142-4 at 28. As further proof of negligence, Cornerstone notes that Crescent's corporate representative testified that the company does not train its employees on how to respond to emergency situations. *Id.* at 25. Additionally, Cornerstone submits evidence that the tugs did not communicate to the Pilot Shirah that they could not hold the MILDE's position. R. Doc. 142-1 at 6. Finally, Cornerstone's putative expert, Captain Karentz, maintains that the failure of the tugs to hold the MILDE's position—as they were ordered to do—and to notify Pilot Shirah of their inability to do so set off a cascade of events that caused the MILDE to allide with Cornerstone's dock. R. Doc. 142-10 at 16-17.

   Considering the summary judgment evidence in the light most favorable to Cornerstone as the nonmovant, fact issues exist regarding whether Crescent fulfilled its duty to act with reasonable care. In other words, Cornerstone has adduced sufficient evidence to raise a genuine dispute of material fact as to whether Crescent was "guilty of some independent negligence," either by assigning inadequately powered tugboats with insufficiently trained crews to the accident scene or in executing Pilot Shirah's orders. *Baker, Carver & Morrell Ship Supplies,* 140

F.2d at 525; *see also Archer Daniels Midland, Co.*, 538 F. Supp. 3d at 648 (summary judgment precluded where, even though there was "no genuine issue of fact that that the [assist] tugs complied with the orders given by" the pilot, a dispute existed as to whether this compliance was "sufficient to satisfy the [tugs'] duty of care").

### B. Applicability of the *In Extremis* Doctrine

Crescent makes a final argument in favor of summary judgment. It invokes the *in extremis* doctrine, contending that it cannot be liable because any negligence on the part of its tugs was a result of an emergency situation created by the negligence of other vessels. R. Doc. 115-1 at 12-13. "[T]he *in extremis* doctrine . . . requires a court to leniently judge errors in judgment committed by a vessel 'put in sudden peril through no fault of her own.'" *In re Complaint of Magnolia Marine Transp. Co.*, 59 F.3d 1240 (5th Cir. 1995) (quoting *Union Oil Co. of Cal. v. Tug Mary Malloy,* 414 F.2d 669, 674 (5th Cir. 1969)). "While this principle must be qualified to the extent that it does not exculpate all faults however flagrant, or obviate the duty of a ship's master to act with a level head, it does require that allowances be made for the position of the master at the time of the circumstances involved." *Union Oil Co.*, 414 F.2d at 674 (internal citations and quotation marks omitted).

In *In re Complaint of Magnolia Marine Transp. Co.,* the Fifth Circuit affirmed the district's refusal to apply the *in extremis* doctrine where a tug boat had "more than five minute in which to do something to avoid collision" with another vessel but took no action until it saw that the vessel that it ultimately collided with was only several hundred feet away. 59 F.3d 1240, *4 (5th Cir. 1995). Given the time the tug had to act, the Fifth Circuit held that it "was not put in 'sudden peril through no fault of her own.'" *Id.*

Viewing the facts in the light most favorable to the nonmovant, the Court concludes that the doctrine is inapplicable to the case at bar. Crescent's tugs were involved in the incident for over two hours. This, of course, is significantly longer than the period of approximately five minutes that the Fifth Circuit deemed not to constitute a "sudden peril" in *Magnolia Marine Transport Co.*, 58 F.3d at *4. Indeed, in the instant matter, the tugs' crews even had the time to take photographs and videos of the accident scene and make calls and send texts for personal purposes wholly unrelated to the operation of the vessels. In short, Crescent's tugs were not faced with a "sudden peril." What is more, Crescent assertedly was negligent in assigning its less powerful tugs to the emergency—a decision that preceded and was unrelated to any sudden danger to its vessels. Accordingly, under the summary judgment standard, Crescent's *in extremis* defense must be rejected.

### V. CONCLUSION

For these reasons, Crescent's motion for summary judgment, R. Doc. 115, is **DENIED.**

New Orleans, Louisiana, this 18th day of May, 2022.

*[signature]*
**UNITED STATES DISTRICT JUDGE**